STEPHEN J. SORENSON, Acting United States Attorney (#3049)
D. LOREN WASHBURN, Assistant United States Attorney
Attorneys for the United States of America
185 South State Street, #400
Salt Lake City, Utah 84111-1506
Telephone:  (801) 524-5682
Facsimile:  (801) 524-6924

FILED
U.S. DISTRICT COURT

2006 APR 12  P  6: 35

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.: |
| | : | |
| Plaintiff, | : | |
| | : | **I N D I C T M E N T** |
| vs. | : | |
| | : | VIOS.:18 U.S.C.  §  1503, OBSTRUCTION OF JUSTICE. |
| PAMELA  ACKERMAN, | : | 18 U.S.C. § 1603(a), PERJURY |
| | : | |
| Defendant. | : | |

Judge Dee Benson
DECK TYPE: Criminal
DATE STAMP: 04/12/2006 @ 14:09:55
CASE NUMBER:  2:06CR00240  DB

The Grand Jury Charges:

## COUNT ONE
## (OBSTRUCTION OF JUSTICE)
### (18 U.S.C. § 1503)

1.    In or about January through March 2006, in the District of Utah,

**PAMELA ACKERMAN,**

defendant herein, did knowingly and corruptly endeavor to influence, obstruct and impede the due

administration of justice, namely proceedings before the Grand Jury for the Central Division of the

District of Utah, by misleading and deceiving the Grand Jury as to ownership of certain vehicles, the

true owners of Rocky Mountain Pizza, and who had provided David Beagley with a notarized

"Affidavit of Truth" signed by ACKERMAN.

## THE CRIMINAL INVESTIGATION

2.    In or about 2005, the Internal Revenue Service ("IRS") commenced a criminal investigation into possible criminal tax offenses by certain taxpayers.

3.    As part of the criminal investigation, ACKERMAN was interviewed by Special Agents of the IRS on or about May 12, 2005.  During this interview, ACKERMAN stated to IRS Special Agents that:

    A.    ACKERMAN worked as a secretary for Rocky Mountain Pizza and that ACKERMAN never had anything to do with financial information of the corporations.

    B.    ACKERMAN did not know who had ownership of the Rocky Mountain Pizza related corporations.

    C.    The truck that is primarily driven by David Beagley is owned by ACKERMAN.

    D.    The Toyota Camry that is primarily driven by David Beagley is owned by ACKERMAN.

4.    Beginning in or about October 2005, and continuing until the date of this indictment, the Grand Jury for the Central Division of Utah conducted an investigation ("the Grand Jury Investigation") into possible violations of federal criminal laws, including: Title 26, United States Code, Sections 7201 (evasion of income taxes), 7203 (failure to file a tax return), and 7212(a) (endeavoring to impede and impair the lawful functions of the IRS); and Title 18, United States Code, Sections 371 (conspiracy), and 1503 (obstruction of justice).

5.    A major focus of the Grand Jury Investigation was to determine whether certain taxpayers had transferred assets to nominees or titled newly acquired assets in the names of nominees in order to avoid having these assets be seized to satisfy tax debts they owed.  Another major focus of the Grand Jury Investigation was to determine whether certain taxpayers had assigned income which was lawfully theirs and which they were required to report on their income tax returns to

others in an effort to evade the assessment and payment of federal income taxes.

6.    During the course of the Grand Jury Investigation, the following matters, among others, were material to the Grand Jury Investigation:

A.    Who was the owner of Rocky Mountain Pizza and who was entitled to income generated by Rocky Mountain Pizza;

B.    Who had control of bank accounts in the name of Rocky Mountain Pizza;

C.    Who was the actual owner of the vehicles driven by David Beagley, including a pickup truck and a Toyota Camry sedan;

D.    How the truck and Toyota Camry driven by David Beagley were paid for;

E.    How David Beagley had obtained information, including an "Affidavit of Truth" signed by ACKERMAN, that was used to create threatening and vexatious communications directed at the United States Attorney's Office, the Court, and the Grand Jury.

### ACKERMAN'S GRAND JURY TESTIMONY

7.    On or about January 18 and March 29, 2006, ACKERMAN testified before the Grand Jury for the Central Division of the District of Utah.  On each occasion of ACKERMAN'S testimony, the foreperson of the Grand Jury administered the oath to ACKERMAN and ACKERMAN promised to tell the truth in the testimony she was about to give.

8.    It was part of the corrupt endeavor that during her grand jury testimony, defendant ACKERMAN made the following materially false and intentionally misleading statements and representations, in substance, under oath:

A.    ACKERMAN purchased the pickup truck that is primarily driven by David Beagley out of funds earned by ACKERMAN and her husband;

B.    ACKERMAN purchased the Toyota Camry that is primarily driven by David Beagley out of funds earned by ACKERMAN and her husband;

C.    ACKERMAN did not know who currently owns Rocky Mountain Pizza or who previously owned Rocky Mountain Pizza;

D.    ACKERMAN did not know whether or not Dale Lee was a business partner with David Beagley in a joint venture known as Rocky Mountain Pizza;

E.    ACKERMAN did not remember whether or not she had given David Beagley a copy of an "Affidavit of Truth" that she prepared the day she

3

first testified before the grand jury.

9.      It was further part of the corrupt endeavor that at the time defendant

ACKERMAN made each of the above-described materially false and intentionally misleading

statements and representations to the grand jury, ACKERMAN was aware that they were false, in

that:

A.      The Toyota Camry that is primarily driven by David Beagley was
        purchased by a cashier's check from an account held in the name of Jenny
        VanOrman that was funded entirely by money belonging to David
        Beagley.

B.      The pickup truck that is primarily driven by David Beagley was purchased
        by a check from Allstate insurance in settlement of a claim made by the
        David Beagley Trust and by approximately $1300.00 in cash.

C.      ACKERMAN was a corporate officer in Rocky Mountain Pizza and knew
        that the president and owner of Rocky Mountain Pizza was David Beagley
        and that Dale Lee was an officer and part owner of Rocky Mountain Pizza:

D.      At or around the time of the dissolution of Rocky Mountain Pizza, Pamela
        Ackerman set up a separate bank account in addition to the regular
        business account; this additional account was to receive an incoming wire
        from the proceeds of the sale of assets of Rocky Mountain Pizza.

E.      ACKERMAN signed corporate registration documents with the state of
        Idaho on which David Beagley signed as President of Rocky Mountain
        Pizza and on which Dale Lee was listed as an officer of Rocky Mountain
        Pizza.

F.      ACKERMAN signed signature cards on accounts belonging to Rocky
        Mountain Pizza on which the only other authorized signer was David
        Beagley.

10.     It was further part of the corrupt endeavor that in the course of her Grand Jury

testimony, ACKERMAN repeatedly claimed that she did not remember certain events and did

not know the answers to certain questions when in fact she did know the answers to those

questions, including:

A.      ACKERMAN testified that she did not remember whether she financed or
        paid in full for any of the cars she claimed to own, with the exception of
        one of her current personal vehicles, including the cars primarily driven by
        David Beagley.

4

B.  ACKERMAN testified that she did not remember whether or not she had ever provided a copy of her "Affidavit of Truth" to David Beagley.

C.  ACKERMAN testified that she did not remember whether she used a loan secured by the truck driven primarily by David Beagley to finance the purchase of the lot her current home was built on.

D.  ACKERMAN testified that she did not remember that the Toyota Camry primarily driven by David Beagley was purchased with a cashier's check signed for by Jenny VanOrman at the direction of David Beagley.

E.  ACKERMAN testified that she did not remember that a pickup truck titled in her name was damaged in a car accident, resulting in an insurance settlement check, which was used to purchase the pickup truck that is primarily driven by David Beagley.

F.  ACKERMAN testified that she did not remember who the owners of Rocky Mountain Pizza were.

G.  ACKERMAN testified that she did not remember if she opened any accounts in the name of Rocky Mountain Pizza.

H.  ACKERMAN testified that she did not remember if Dale Lee was associated with Rocky Mountain Pizza.

I.  ACKERMAN testified that she did not remember if she had ever forged the name of Dale Lee on a contract.

11.  It was further part of the corrupt endeavor that in the course of her Grand Jury testimony, ACKERMAN repeatedly refused to answer questions asked of her when those questions involved copies of documents reflecting financial transactions she conducted.

12.  It was further part of the corrupt endeavor that in her testimony before the Grand Jury on January 19, 2006, ACKERMAN used her extensive note-taking as a device to avoid answering questions about her involvement with David Beagley and Rocky Mountain Pizza.

All in violation of Title 18, United States Code, Section 1503.

## COUNT TWO
## (PERJURY)
### (18 U.S.C. § 1623(a))

1.  The Grand Jury realleges Paragraphs 2-12 of Count One as though fully set forth herein.

2.  On or about March 29, 2006, in the Central Division of the District of Utah,

5

### PAM ACKERMAN,

the defendant herein, while under oath in a proceeding before the Grand Jury of the United States

did knowingly make false material declarations as follows (underlined portions are alleged as

false):

QUESTION:   Well, let me ask you this: was ever there a time when you owned that car [a tan colored Toyota Camry] when it wasn't being driven primarily by David Beagley?

ANSWER:   Under duress, I don't know.  I don't remember.

QUESTION:   Could you please tell the Grand Jurors how it came about that you owned that car?

ANSWER:   I purchased it with our money, my husband and I.

QUESTION:   You purchased it with your earnings?

ANSWER:   Correct.

QUESTION:   Where did you get that money?

ANSWER:   Under duress, the same place I get all of our money, under duress, from our earnings.  I can't remember exactly where we get all of our money from.

QUESTION:   Would it surprise you to hear that Jenny VanOrman wrote a check to a car dealer to purchase that car?

ANSWER:   I don't remember.  I don't remember how we purchased it.

3.   In truth and fact, as ACKERMAN well knew when she gave this testimony, it was

false in that:

1.   VanOrman signed for a cashier's check that was used to pay for the 1998 tan Toyota Camry at the direction of her father, David Beagley;

2.   The funds used to purchase the tan 1998 Toyota Camry came from an account in the name of Jenny VanOrman which was funded entirely with money belonging to David Beagley; and,

3.   The 1998 tan Toyota Camry was not purchased using Pamela Ackerman or her

6

husband's earnings.

all in violation of Title 18, United States Code, Section 1623(a).

### COUNT THREE
### (PERJURY)
### (18 U.S.C. § 1623 (a))

1.     The Grand Jury realleges Paragraphs 2-12 of Count One as though fully set forth

herein.

2.     On or about March 29, 2006, in the Central Division of the District of Utah,

### PAM ACKERMAN,

the defendant herein, while under oath in a proceeding before the Grand Jury of the United States

did knowingly make false material declaration(s) as follows (underlined portions are alleged as

false):

QUESTION:    Let me ask you again: Do you have any idea why this car [a tan 1998 Toyota Camry] was paid for by a check from Jenny VanOrman's bank account?

ANSWER:    Under duress, I do not.  I'm not in charge of my sister so who Jenny VanOrman are we talking about.

QUESTION:    Well, you told the Members of the Grand Jury that you purchased the car with your earnings?

ANSWER:    That's correct under duress.

QUESTION:    If that's true, can you explain to the Members of the Grand Jury why this car was actually paid for from a check from Jenny VanOrman?

ANSWER:    Under duress, I don't recall?

QUESTION:    You have no idea?

ANSWER:    I don't recall like I've already stated.

QUESTION:    Are you aware that the funds in that account from Jenny VanOrman

originally came from David Beagley?

ANSWER:     You'll have to ask David Beagley that, under duress.

3.     In truth and fact, as ACKERMAN well knew when She gave this testimony, it was false in that:

1.     Jenny VanOrman signed for a cashier's check that was used to pay for the 1998 tan Toyota Camry at the direction of her father, David Beagley.
2.     The funds used to purchase the tan 1998 Toyota Camry came from an account in the name of Jenny VanOrman which was funded entirely with funds belonging to David Beagley.
3.     The 1998 tan Toyota Camry was not purchased using Pamela Ackerman's or her husband's earnings.

all in violation of Title 18, United States Code, Section 1623(a).

## COUNT FOUR
## (PERJURY)
### (18 U.S.C. § 1623(a))

1.     The Grand Jury realleges Paragraphs 2-12 of Count One as though fully set forth herein.

2.     On or about March 29, 2006, in the Central Division of the District of Utah,

## PAM ACKERMAN,

the defendant herein, while under oath in a proceeding before the Grand Jury of the United States did knowingly make false material declarations as follows (underlined portions are alleged as false):

QUESTION:   How was that truck [a tannish colored 1999 Chevy 1500] purchased?

ANSWER:     What do you mean "how"?

QUESTION:   Where did the money come from?

ANSWER:     Me and my husband's earnings.

8

QUESTION:    Do you know how you transferred that money to the dealer?

ANSWER:    I don't remember.

QUESTION:    Do you know who the dealer was?

ANSWER:    Truck World, I believe.  I think that's it.  The Truck World or – I believe
that's right.

QUESTION:    Would you be surprised to know that $10,000 towards the purchase of that
truck came from an insurance settlement from wrecking an earlier truck?

ANSWER:    I don't recall that.

QUESTION:    You have no idea?

ANSWER:    I don't recall that.

QUESTION:    Where – how was it that the money got to the dealer on this truck that you
owned?

ANSWER:    I already answered that.  I said I don't recall.

3.    In truth and fact, as ACKERMAN well knew when She gave this testimony, it

was false in that:

1.    This tan colored 1999 Chevy 1500 pickup truck was purchased using a
$10,045.80 insurance settlement check from Allstate Insurance in settlement of a
claim made by the insured, the David Beagley Trust; additionally $1,300.00 in
cash was used to fund the purchase of the truck.

2.    The 1999 Chevy 1500 pickup truck was not purchased using Pamela Ackerman's
or her husband's earnings.

all in violation of Title 18, United States Code, Section 1623(a).

## COUNT FIVE
## (PERJURY)
### (18 U.S.C. § 1623(a))

1.    The Grand Jury realleges Paragraphs 2-12 of Count One as though fully set forth

herein.

2.      On or about March 29, 2006, in the Central Division of the District of Utah,

**PAM ACKERMAN,**

the defendant herein, while under oath in a proceeding before the Grand Jury of the United States

did knowingly make false material declarations as follows (underlined portions are alleged as

false):

QUESTION:   Okay, so let's talk about this tan truck I believe it was that you described it. It's all over the place. Sometimes it is at your house, sometimes it is at your father's. Let's isolate it to that truck and the Toyota Camry that we talked about earlier.

ANSWER:    Okay.

QUESTION:   Are these two cars currently garaged at your house?

ANSWER:    What do you mean by "garaged"?

QUESTION:   Primarily parked there?

ANSWER:    I think I just mentioned that my parents use both of those two cars in Utah right now.

QUESTION:   Okay.

ANSWER:    And I actually told you why, as well.

QUESTION:   Right now David Beagley is the primary person, David and Bobbie Beagley, his wife, are the primary people who drive those cars; right?

ANSWER:    I believe so.

QUESTION:   And you don't --

ANSWER:    I have used them, as well.

QUESTION:   Occasionally. You don't insure those cars?

ANSWER:    No.

QUESTION:   Because, as you said, you insure your cars that you want to drive, but you

don't insure those two cars; correct?

ANSWER:        Like I said, in exchange for them using it, that's it.

QUESTION:      And you don't even pay attention to the cars enough to know whether or not one of them has been wrecked and gotten an insurance check back for them?

ANSWER:        I don't know what you mean by that.

QUESTION:      Isn't it true that you didn't provide any of the money to purchase either that car or that truck?

ANSWER:        Like I said, I did use mine and my husband's earnings to purchase both of those trucks.

QUESTION:      Isn't it true that all of the money to purchase those trucks came directly or indirectly from David Beagley?

ANSWER:        I can't answer that. I don't know. I have used mine and my husband's earnings to purchase both of those trucks.

. . .

QUESTION:      Isn't it true that you don't really own those cars, you are only a nominee for your father, David Beagley?

ANSWER:        Actually, I've stated, I think, four or five times that I and my husband used our earnings to purchase those cars. And they are my cars. And it's a favor to them to allow them to use it.

QUESTION:      Isn't it true that --

ANSWER:        I don't how much more plain that answer can get.

3.        In truth and fact, as ACKERMAN well knew when she gave this testimony, it was

false in that:

1.        This tan colored 1999 Chevy 1500 pickup truck was purchased using a $10,045.80 insurance settlement check from Allstate Insurance in settlement of a claim made by the insured, the David Beagley Trust; additionally $1,300.00 in cash was used to fund the purchase of the truck.

2.        The 1999 Chevy 1500 pickup truck was not purchased using Pamela Ackerman's or her husband's earnings.

3.     Jenny VanOrman signed for a cashier's check to pay for the 1998 tan Toyota Camry at the direction of her father, David Beagley.

4.     The funds used to purchase the 1998 tan Toyota Camry came from an account in the name of Jenny VanOrman which was funded entirely with funds legally belonging to David Beagley.

5.     The 1998 tan Toyota Camry was not purchased using Pamela Ackerman's or her husband's earnings.

All in violation of Title 18, United States Code, Section 1623(a).

**COUNT SIX**
**(PERJURY)**
(18 U.S.C. § 1623(a))

1.     The Grand Jury realleges Paragraphs 2-12 of Count One as though fully set forth herein.

2.     On or about March 29, 2006, in the Central Division of the District of Utah,

**PAM ACKERMAN,**

the defendant herein, while under oath in a proceeding before the Grand Jury of the United States did knowingly make false material declarations as follows (underlined portions are alleged as false):

QUESTION:    Well, let me ask you: Do you know what Rocky Mountain Pizza Company is?

ANSWER:    A company that I used to work for.

QUESTION:    Do you know who owns it?

ANSWER:    I don't right now.

QUESTION:    Do you know who did own Rocky Mountain Pizza Company?

ANSWER:    I don't recall who the owners were.

QUESTION:    Who all worked there?  How did you get your job at Rocky Mountain Pizza Company?

ANSWER:    <u>I was hired by – I think it was my dad who hired me.  I don't remember
who.  It could have been my dad.</u>

QUESTION:   Your dad?

ANSWER:    <u>Could have been.</u>

3.    In truth and fact, as ACKERMAN well knew when She gave this testimony, it
was false in that:

1.    Rocky Mountain Pizza Company was owned by David Beagley, Dale Lee, and
Dustin Preece.
2.    Pamela Ackerman was listed as the corporate secretary on the initial State of
Idaho certificate of registration of a business; David Beagley was listed as the
company President on the same document.
3.    At or around the time of the dissolution of Rocky Mountain Pizza, Pamela
Ackerman set up a separate bank account in addition to the regular business
account; this additional account was to receive an incoming wire from the
proceeds of the sale of assets of Rocky Mountain Pizza.
4.    Pamela Ackerman was hired as corporate officer by her father, David Beagley.
5.    Pamela Ackerman signed checks that were disbursed to David Beagley.  In the
memo section of these checks there were various notes such as owner, officer
salary, insurance, and professional fees.

all in violation of Title 18, United States Code, Section 1623(a).

**COUNT SEVEN**
**(PERJURY)**
(18 U.S.C. § 1623(a))

1.    The Grand Jury realleges Paragraphs 2-12 of Count One as though fully set forth
herein.

2.    On or about March 29, 2006, in the Central Division of the District of Utah,

**PAM ACKERMAN,**

the defendant herein, while under oath in a proceeding before the Grand Jury of the United States

did knowingly make false material declarations as follows (underlined portions are alleged as

false):

QUESTION:     Did anybody supervise your dad at Rocky Mountain Pizza Company?

ANSWER:       I don't know.  I was hired as part-time secretary.

QUESTION:     And as part of your duties as a part-time secretary, did you sign payroll checks?

ANSWER:       I helped with the payroll at times.

QUESTION:     Did you sign payroll checks?

ANSWER:       I believe so.

QUESTION:     Did you have signature authority on accounts at Rocky Mountain Pizza Company such that you would be allowed to sign payroll checks?

ANSWER:       If I signed checks, I must have.

QUESTION:     Did you open bank accounts in the name of Rocky Mountain Pizza Company?  Did you personally go down and open those accounts?

ANSWER:       I don't remember.

3.     In truth and fact, as ACKERMAN well knew when She gave this testimony, it was false in that:

1.     Pamela Ackerman is listed as opening bank account number 106069818 in the name of Rocky Mountain Pizza Service Inc. at Wells Fargo Bank.

all in violation of Title 18, United States Code, Section 1623(a).

## COUNT EIGHT
## (PERJURY)
### (18 U.S.C. § 1623(a))

1.     The Grand Jury realleges Paragraphs 2-12 of Count One as though fully set forth herein.

2.     On or about March 29, 2006, in the Central Division of the District of Utah,

**PAM ACKERMAN,**

the defendant herein, while under oath in a proceeding before the Grand Jury of the United States did knowingly make false material declarations as follows (underlined portions are alleged as false):

QUESTION:   Who's Dale Lee?

ANSWER:   He is an old college friend of my dad's.

QUESTION:   Of your dad's?
Were your dad and Dale Lee business partners that you are aware of?

ANSWER:   I don't know that?

QUESTION:   Was Dale Lee associated at all with Rocky Mountain Pizza Company?

ANSWER:   I don't recall.

QUESTION:   Did Dale Lee have signature authority on Rocky Mountain Pizza Services Company checks?

ANSWER:   I don't know that, either.

# # # # # # # # # #

3.    In truth and fact, as ACKERMAN well knew when She gave this testimony, it

was false in that:

1.    Dale Lee was listed as Chairman of the Board on the Reinstatement (annual report
      form), the same document which named Pam Ackerman as company secretary;
      this document was signed by Pam Ackerman.


All in violation of Title 18, United States Code, Section 1623(a).


A TRUE BILL:


_____ /s/
FOREPERSON OF THE GRAND JURY


STEPHEN J. SORENSON
Acting United States Attorney


D. LOREN WASHBURN
Assistant United States Attorney